O

# United States District Court
# Central District of California

| | |
|---|---|
| FANTASTIC SAMS SALONS CORP., | Case No. 2:14-cv-06727-ODW(PJWx) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS'** |
| FRANK MOASSESFAR; PARVANEH | **MOTION TO DISMISS [29]** |
| MOASSESFAR, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Fantastic Sams Salons Corp. ("Fantastic Sams") brings this action against husband and wife Defendants Frank and Parvaneh Moassesfar (collectively "the Moassesfars") for a dispute arising out of a hair salon franchise agreement. Fantastic Sams' Complaint raises claims for trademark infringement and breach of contract (ECF No. 1), and in their Motion to Dismiss the Moassesfars argue that both claims are barred by a contractual limitations period (ECF No. 29). For the reasons discussed below the Court **DENIES** the Moassesfars' Motion to Dismiss.[1]

## II.   FACTUAL BACKGROUND

Fantastic Sams is a franchisor of family hair cutting salons throughout the

---

[1] After carefully considering the papers filed related to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

United States.  (Compl. ¶ 5.)  In 2007, the Moassesfars became franchisees of two Fantastic Sams salons in California—one in Tarzana and the other in Northridge.  (*Id.* ¶ 6.)  The Tarzana franchise agreement was entered into on February 13, 2007, and expires on February 16, 2017, while the Northridge franchise agreement was entered into on November 21, 2007, and expires on December 31, 2019 (collectively "the Franchise Agreements").  (*Id.* ¶¶ 6, 25.)  The Franchise Agreements for both salons are identical except for the entered-into and expiration dates.  (*See* ECF No. 1, Exs. A and B.)  Among other things, the Franchise Agreements require the Moassesfars to pay a weekly licensee and advertising fee (collectively the "Fees") for each franchise location via electronic draft.  (Compl. ¶ 26.)

The Franchise Agreements contain five critical provisions.  First, Paragraph 3(b)(1) provides:  "Licensee shall continue to pay the Weekly License Fee to [Fantastic Sams] throughout the term of this Agreement, or for so long as it uses any part or all of the Fantastic Sams System or the Marks, which ever period is longer, whether such use is authorized or not[.]"  (ECF No. 1, Ex. A.)  Second, Paragraph 12(b)(2) of the Franchise Agreements states that "[t]his agreement shall automatically terminate, without notice from [Fantastic Sams] . . . If Licensee's bank fails or refuses to honor any authorized bank draft or other prepayment arrangement for any weekly fee during the term of this Agreement for two (2) consecutive weeks . . . ."  (*Id.*)  Third, Paragraph 12(e) states that "In no event will termination of this Agreement for any reason relieve Licensee of its obligations, debts or responsibilities accrued under this Agreement."  (*Id.*)  Fourth, Paragraph 12(e)(2)(f) states that upon termination of the Franchise Agreements the Moassesfars "[s]hall pay immediately, all fees and monies due [Fantastic Sams], including all Weekly License and Adverting Fees for so long as the Marks are used or until the expiration date of this Agreement, had this Agreement not been terminated, whichever is later."  (*Id.*)  Fifth, and most importantly, Paragraph 13(c) contains the contractual limitations clause, which states:

Licensee and [Fantastic Sams] agree that any claim arising

1        out of this Agreement, whether for recission or damages or

2        any other type of remedy at law or in equity shall be brought

3        within the later of one (1) year from the date of the act or

4        failure to act by any person or six (6) months from the date

5        claimant knew or should have known of the act or failure to

6        act by the party sought to be charged.

7  (*Id.*)

8        During the week of January 13, 2011, Fantastic Sams' attempt to draft the Fees

9  from the Tarzana salon failed because the Moassesfars' bank account was allegedly

10  closed. (Compl. ¶ 32.) Fantastic Sams has allegedly not collected any of the Fees

11  from the Tarzana location since January 13, 2011. (*Id.* ¶ 33.) During the week of

12  February 19, 2012, Fantastic Sams' attempt to draft the Fees from the Northridge

13  location failed because the Moassesfars' bank account was also allegedly closed. (*Id.*

14  ¶ 34.) Fantastic Sams has allegedly not collected any of the Fees from the Northridge

15  location since February 19, 2012. (*Id.* ¶ 33.) Despite not paying the Fees, the

16  Moassesfars allegedly continued to operate both locations as franchised Fantastic

17  Sams salons until October 2014. (*Id.* ¶ 41.)

18        On May 30, 2014, Fantastic Sams took its first legal action by sending the

19  Moassesfars a written notice of default which specified that the Moassesfars had five

20  days to cure the defaults for both locations. (*Id.* ¶ 36.) The Moassesfars did not cure

21  within five days, and Fantastic Sams filed the Complaint on August 27, 2014. On

22  October 24, 2014, the parties submitted (ECF No. 23), and the Court granted (ECF

23  No. 27), a Stipulation which effectively terminated both of the Moassesfars' salons.

24  The Stipulation, among other conditions, required the Moassesfars to return all

25  confidential information related to franchise operations and all trademarked signage

26  and displays. (*Id.*) As a result of the Stipulation, the Moassesfars are no longer

27  operating any Fantastic Sams salons. All that remains before the Court—and is

28  subject to the pending Motion to Dismiss—is Fantastic Sams' prayer for retrospective

1  relief.[2]

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted).  "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim."  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citations omitted). The Court may consider contracts incorporated in a complaint without converting a

---

[2] Count II of the Complaint is a cause of action for "Specific Performance."  (Compl. ¶¶ 56–62.) This claim for prospective relief appears mooted as a result of the October 24th Order granting the Stipulation.  (ECF No. 27.)  Because both parties' briefs ignore the issue and the Court cannot find any claim within Count II that was not specifically addressed by the Stipulation, the Court concludes that Count II is moot.

1  motion to dismiss into a summary judgment hearing.  *United States v. Ritchie*, 342
2  F.3d 903, 907–08 (9th Cir. 2003).

3                            **IV.   DISCUSSION**

4          The Complaint contains two causes of action; Count I is for trademark
5  infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and Count III is for
6  breach of contract.  (Compl. ¶¶ 45–55, 63–74.)  In their Motion to Dismiss, the
7  Moassesfars argue that Fantastic Sams is not entitled to either claim for relief because
8  both claims are barred by the contractual limitations clause in the Franchise
9  Agreements.  (ECF. No. 29 ["Def. MTD Br."] at 3.)  As explained below, the
10 contractual limitations clause does not bar both claims but limits the potential scope of
11 liability for the Moassesfars' allegedly unlawful conduct.

12 **A.    Count III—Breach of Contract**

13         The Moassesfars argue that the breach of contract claim is barred by the
14 contractual limitations clause because the Franchise Agreements terminated in full
15 when the Moassesfars missed two consecutive payments.  The Moassesfars rely on a
16 five-step rationale:  (1) Paragraph 12(b)(2) states that the *entire* Franchise Agreement
17 automatically terminates when two consecutive payments are missed; (2) the
18 Moassesfars missed two consecutive payments on or around January 13, 2011, and
19 again on or around February 19, 2012, thereby automatically terminating all
20 contractual relationships between the parties; (3) Paragraph 13(c) of the Franchise
21 Agreements requires that "any claim arising out of this Agreement" must be brought
22 within one year of the "act"; (4) Fantastic Sams had to file suit on or before January
23 13, 2012, and February 19, 2013—one year from the date of the breaches—but did not
24 file Complaint until August 27, 2014; and therefore (5) the breach of contract claim is
25 barred by the contractual limitations period.  (Def. MTD Br. at 6–10.)

26         This rationale fails at step one because the Court cannot ignore state law or read
27 one provision of the Franchise Agreement in isolation.  *See Am. Alternative Ins. Corp.*
28 *v. Superior Court*, 37 Cal. Rptr. 3d 918, 922 (Cal. Ct. App. 2006) ("We consider the

contract as a whole and interpret the language in context, rather than interpret a provision in isolation.").

The Court first notes that California law prohibits a franchise agreement from automatically terminating without notice to the franchisee and an opportunity to cure. *See* Cal. Bus. & Prof. Code §§ 20020–21.  The Moassesfars are asking the Court to interpret and apply Paragraph 12(b)(2) as a harsh provision that terminates the entire Franchise Agreement without notice and an opportunity to cure, which is contrary to California law.  The Court rejects this interpretation which is indispensable to the Moassesfars argument.  *See JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 8 Cal. Rptr. 3d 840, 848 (Cal. Ct. App. 2004) ("[A]ll contractual provisions which have for their object, directly or indirectly, to exempt anyone from obeying the laws of California are unlawful and void.").

Interpreting Paragraph 12(b)(2) in a manner that does not violate California law does not render the provision meaningless.  An automatic "termination" under Paragraph 12(b)(2) triggers the acceleration clause found in Paragraph 12(e)(2)(f), which states that upon "termination" of the Franchise Agreements the Moassesfars "[s]hall pay immediately, all fees and monies due [Fantastic Sams], including all Weekly License and Adverting Fees for so long as the Marks are used or until the expiration date of this Agreement, had this Agreement not been terminated, whichever is later."  (ECF No. 1, Ex. A.)  "Termination," for purposes of Paragraph 12(b)(2), is a condition precedent to the automatic acceleration of all Fee payments running through the expiration of the Franchise Agreements.  To the extent that Fantastic Sams seeks Fee payments running through the expiration dates—February 2017 and December 2019—the contractual limitations clause in Paragraph 13(c) bars such recovery.  The acceleration clause was triggered when the Moassesfars first "terminated" the Franchise Agreements and any claim to damages for accelerated Fees is subject to the contractual limitations clause.  Because the Complaint was filed well over a year after the acceleration clause was triggered, the contractual limitations clause thus precludes

Fantastic Sams from bringing any claim seeking Fee payments running through the expiration dates of the Franchise Agreements.

The Moassesfars' proposed interpretation of Paragraph 12(b)(2) would not only violate California law, but would also contradict other provisions in the Franchise Agreement. The entirety of the Franchise Agreement clearly indicates that the automatic termination provision in Paragraph 12(b)(2) did not relieve the Moassesfars from making Fee payments.  Paragraph 3(b)(1) states that the Moassesfars are required to pay the weekly Fees throughout the term of the Franchise Agreement "*or for so long as [the Moassesfars] use[] any part or all of the Fantastic Sams System or the Marks . . . whether such use is authorized or not[.]*"  (ECF No. 1, Ex. A [emphasis added].)  Paragraph 12(e) states that "[i]n no event will termination of this Agreement for any reason relieve Licensee of its obligations, debts or responsibilities accrued under this Agreement."  (*Id.*)  These provisions demonstrate that the parties did not intend the "termination" of the Franchise Agreements to end all legal responsibilities and obligations.  While the Moassesfars allegedly missed two consecutive weekly payments thus "terminating" the Franchise Agreements, they also allegedly continued operating their salons as Fantastic Sams franchises.  The Moassesfars are bound by Paragraph 3(b)(1) which requires weekly Fee payments for unauthorized, post-termination salon operations, and are bound by Paragraph 12(e) which specifically states that "termination" does not relieve the Moassesfars of their obligations under the Franchise Agreements.  The Moassesfars therefore had a contractual duty to continue making the weekly Fee payments.

The contractual limitations provision in Paragraph 13(c) limits the scope of liability for missed Fee payments to the year preceding the filing of the Complaint. Fantastic Sams concedes this liability limitation.  (*See* ECF No. 33 ["Pl. Opp. Br."] at 7 n.3 ["Accordingly, it seeks no monetary damages for unpaid fees due before August 27, 2013."].)  The Court concludes that Fantastic Sams' prima facie case for breach of contract is not barred by the contractual limitations provision, however, Fantastic

1   Sams may only recover alleged breach of contract damages from August 27, 2013, to

2   the date the Moassesfars ceased all salon operations.  All claims to contract damages

3   occurring before August 27, 2013, and after the Moassesfars stopped operating their

4   franchises, are barred.

5   **B.    Count I—Trademark Infringement**

6          The Moassesfars argue that Count I of the Compliant—a claim for trademark

7   infringement under the Lanham Act—is also barred by the contractual limitations

8   clause.   (Def. MTD Br. at 9.)   According to the Moassesfars, the contractual

9   limitations period required Fantastic Sams to bring its trademark infringement claim

10  within one year of the missed Fee payments which terminated the entire Franchise

11  Agreement, including the license to use Fantastic Sams' trademarks.  (*Id.*)  The parties

12  do not dispute that the Franchise Agreements granted the Moassesfars a license to use

13  Fantastic Sams' trademarks.

14         Fantastic Sams responds that the contractual limitations period does not apply

15  to its trademark infringement claim because this claim does not "relate to any right or

16  obligation pursuant to the Franchise Agreements."  (Pl. Opp. Br. at 4.)  According to

17  Fantastic Sams, Count I is based solely on the Moassesfars' infringing conduct that

18  occurred *after* the Moassesfars failed to comply with Fantastic Sams' written notice of

19  default in May 2014.  (*Id.* at 5.)  This legal theory for Count I is consistent with the

20  Complaint which seeks a court order for "any and all profits derived as a result of

21  marketing or promoting salon services since June 6, 2014, the date of termination of

22  the Moassesfars' license to use the Fantastic Sams Marks." (Compl. at 14.)

23         The Court accepts Fantastic Sams' legal theory as a cognizable claim for

24  trademark infringement.  To properly terminate a franchise agreement in California,

25  the franchisor must provide a written notice of breach and five days to cure.  *See* Cal.

26  Bus. & Prof. Code § 20021(j).  The Complaint alleges that Fantastic Sams complied

27  with California law in terminating the Franchise Agreements and the Moassesfars'

28  license to use Fantastic Sams' trademarks, yet the Moassesfars continued to use

8

Fantastic Sams' trademarks for some period thereafter.  (*See* Compl. ¶¶ 36–44.)  The Moassesfars do not dispute that these allegations satisfy the prima facie elements for trademark infringement.  *See* 15 U.S.C. §§ 1051, *et seq.*  This claim is not barred by the contractual limitations period because Fantastic Sams' legal theory sets the unlawful conduct as beginning on June 6, 2014, which is a date within a year from when the Complaint was filed.  The Court concludes that Fantastic Sams stated a claim for trademark infringement upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and this claim is limited to harm occurring after June 6, 2014.

## V.   CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Defendants Frank and Parvaneh Moassesfar's Motion to Dismiss.  (ECF No. 29.)

**IT IS SO ORDERED.**

January 21, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**